I see if I may, Your Honor. With respect, if it pleases the Court, Marie Silverstein. We have 30 for both appeals on our side and 30 on Ms. McGimsey's side for Volkswagen. We've agreed previously among counsel to split it up. Mr. Segevich will have 15. We'll have 15, Tegeli and I. And of our 15, we'd like to reserve three minutes for rebuttal, and I'll start. That's fine. Same, Your Honor. Thank you. Thank you. Thank you all for letting us present the oral argument virtually today. We appreciate it. This is a tremendous convenience, and so far it looks like it's been going pretty well this morning. We represent a group of what are considered branded title claimants. Now, the 500,000 vehicles that were part of the VW fraud emissions scandal settlement included a smaller group that was never certified as a subclass called branded title claimants. Branded title, despite the district court's ruling below, order below, that says branded title is not defined, it is defined at three different locations in the settlement agreement. And these vehicles are damaged to them, some to a great extent where they're not registrable, others that are drivable, typically because they've been rebuilt. So of the 500,000 class members, there are 5,000 that are branded titles vehicles. We represent 500 vehicles with about 117 or 18 owners. Mr. Segevich has about 200 of the vehicles among a various group of owners. All the owners, except in a few instances, are used car dealers. So the used car dealers bought these at auction and then repurposed them for subsequent sale or, which is the much maligned action, were profiteering by selling them back to Volkswagen. And I say that in quotes profiteering, and it's much maligned because it's just a I'm going to just give you the overview, and I know I'm going to run out of time. So I'm going to try to get it in. There's both an abusive expression, and this is also ripe for de novo review, because we're talking about a very succinct and specific portion of the settlement agreement that deals with modifications of the agreement, substantive modifications. The agreement says you can amend, modify, or expand the provisions of the agreement, but you only do it in two different ways. You can do it either before the fairness hearing and the order that adopts, which occurred here in October 2016, the settlement agreement. And if you do that, you have to have a written agreement of the parties, capital P on parties. That's the class reps in Volkswagen, the only two parties, not the claims review committee. And then secondly, there has to be an order approving that. Now Volkswagen has taken the position that we've missed the vote on that because that's exactly what occurred here. Although it happened well after the fairness hearing, after a whole list done by a non-party that was never adopted by the court. And so therefore, because there was an agreement of the parties and a court approval, we don't have any right to complain about the entirety by the district court's adoption of what's called the general framework that added four more grounds for excluding a branded title vehicle. The framework was created solely and exclusively for the purpose of limiting the rights of class members who held branded title vehicles. Volkswagen's position is that the second type of modification under 14.1 of the settlement agreement was there as an optional provision. We disagree. We say that the second provision required a written agreement of the parties. There was none. There was a recommendation in the report of the independent claims representative that basically I'm going to read from that in a second here. It's in our briefs and also that the changes, the modifications, amendments, expansions have to found to be consistent with the settlement agreement, which the district court did address in passing. But he failed to address, the court failed to address the critical aspect of the post-settlement approval orders requirement that any modifications not limit the rights of the class members. So here's how our rights have been limited. Section 2.16 of the settlement agreement defines the class. Section C defines the exclusions to the class. Always from the beginning it's been contemplated that these branded title claims, those holding typically dealers buying at auctions, these types of vehicles that they would be excluded from the settlement if as of September 16, September 18, 2015, they had a branding on the title on that day, not afterwards, but on that day and that they were not operable. Either one of those disqualifies a branded title from participating. And so what happened here inexplicably is during the process, there was an absolute cessation of branded title claims being processed. No notice was provided to the branded title class members. That's why that was. In the midst of the process, there's published a February 2018 report from Ann Cora Consulting, who was the independent claims administrator. And here's what they said. And again, I'm going back to this much maligned term of public hearing. And again, I'm tongue-in-cheek saying it in quotes because we concede that we bought the cars at auction to take them off the road and sell them back to Volkswagen to make a profit. Nothing wrong with that. Nothing excludes that from the settlement. And so the trial court essentially adopted, almost verbatim, significant portions of the Ann Cora report. At page 39 of the report itself, and this is in the record in our volume one, page 257. And again, the February 2018 report, there's a section in the report that was filed quarterly that reports on all aspects of the administration settlement. There was a dedicated section for what are called non-standard claims. The branded title were one of those. Others included Canadian claims and others. So with respect to our folks, about 700 here represented on this appeal, here's what Ann Cora said. This is page 39. By undertaking necessary repairs to convert these vehicles back to an operable state, the apparent intent of many of these consumers is to profit through participation in the claims program. Some of these consumers have taken the position that because claims on these types of vehicles are not expressly excluded in the class action settlement agreement, they should be eligible. The agreement says, the report continues, the class action agreement expressly excludes claims by consumers with a vehicle that, quote, had a branded title. And here's the definitions, three places of the settlement agreement. Here's one. Had a branded title of assembled, capital A, dismantled, capital D, et cetera. Flood, junk, rebuilt, reconstructed, or salvaged on September 18, 2015, and was acquired from a junkyard or loophole. It does not expressly address circumstances involving a vehicle with a title that was branded subsequent to September 18, 2015. So the Ann Cora group goes on and recommends a general framework with four elements that essentially expand the exclusions to include synonymous with junkyard or salvage yard is insurance auction, nowhere in the original 216 settlement agreement. So that was expanded as well as attempting to close the gap on post branded title claim acquisitions, and also attempt to make a distinction between a salvage vehicle and a rebuilt vehicle. And the Ann Cora report goes on to say that with respect to rebuilt, those may be compensable. Salvage, no. Counsel, what's wrong with the district court's ruling that those changes were a modification of the settlement? Well, Your Honor, what's wrong with that is the very idea that, well, I'll tell you a couple ways. One is the way the district court did it. So let's assume Volkswagen is correct. And in Volkswagen's brief, which I'm sure will be argued, you can just have a written agreement of the parties, and you can have an order that approves that. Okay. So first of all, this Ann Cora report is signed by the four counsel to the steering committee. It's not signed by Volkswagen. It's not signed by the CRC. It's something that the CRC was discussing with the consultant. There's no evidence in the record anywhere of an agreement between the parties. Secondly, there was no promotion by anyone, even Ann Cora, perhaps, if it could have appeared in the proceedings as an interest to have the court approve that. The court never approved anything. What the court did was, in our case, in denying our motion, said the court is not, this is at page six, the court is not making a sui sponte modification here. It is approving modifications that the parties, i.e. class reps and VW, agree to. There's nothing in the record anywhere that supports that. So that's what's wrong with the modification. If you try to understand, divine the meaning of the case, who was the steering committee representatives for the class. As I said at the outset, there was no specific representation of the branded title people. Not sure why. I know Volkswagen argues that we didn't like that. We should have opted out, but the opt out to do that was long before these new definitions and modifications were even proposed. So what's wrong with the way the court did it is it was an improper sui sponte attempt to modify completely contrary to the plain language of section 14.1 of the settlement. That's for starters. Didn't the district court find that since the CRC, which includes the two parties, adopted the new framework that that would constitute a modification requested by the parties? Your honor, I don't mean to be glib, but the only way you can get to that kind of a supportable conclusion is to follow the so-called holistic review of the settlement agreement, which was done by the CRC. So admittedly, the CRC is represented by Volkswagen, Plaintiff's steering committee, and the independent judge who was appointed as a neutral retired judge. But the ability to go through a holistic review is one thing to understand the new categories of ways to exclude branded title dealers is a heck of a lot more than a holistic review. The document was rewritten. That's why we say de novo is the easiest means through which this can be reversed in total. Nobody's rights are impacted by a complete reversal of the general framework. Throw it out. It shouldn't apply. Nobody's rights are affected by that. The rest of the administration of the settlement will go forward. The $10 billion has been properly and effectively managed and administered. The only parties who have been thrown under the bus here, not to mix the metaphor, but the only parties to have suffered the consequences are folks. And so what's good is that there is no further certified subclass. It's just our people. The others can't speak for why they chose to drop out and do nothing. But right now, there's no settlement program, but for the rights of our folks. And I've only got two minutes and 17 seconds left, which I'm hoping to reserve for rebuttal. Thank you, counsel. Mr. You may proceed. Thank you, your honors. As I mentioned, I'm John Siglitz. I'm appearing on behalf of claimants for Shoney Muggers, AutoBid, and Kennedy's. Their claims have been consolidated for purposes of these appeals, and I'm going to refer to them as the consolidated claimants. We have 220 eligible vehicles ready for return to Volkswagen, and we're here to ask that the court order Volkswagen to take those vehicles back and pay full buyback and restitution. We're asking for two distinct forms of relief from this court. First, we ask that the court reverse the district court determination approving a modification to the settlement agreement in June 2019. And second, we're going to ask that the court look at the plain meaning, the plain language of the unmodified settlement agreement and come to the conclusion that Volkswagen should be ordered to pay a full buyback and restitution for the consolidated claimants 220 eligible vehicles. Thank you, Judge Brumette, for the question about what is wrong with this modification. As for the consolidated claimants, what is wrong with the modification is that there is evidence in the record before the district court and before this appellate court which establishes some very important things that makes the district court decision a clear error of California law. First, in the record is the non-Volkswagen dealer licenses of the consolidated claimants. This, in addition to their 220 eligible vehicles, establishes that they are class members and as such are persons for whom the settlement agreement is expressly intended to benefit. Second, there is evidence in the record of identical forms of title that have been treated totally differently by Volkswagen during the same time period. The relevant time period is on or before December of 2016 and running through June and so of 2017. In the exhibits three and four to the declaration attesting to their reliance on the plain meaning of the settlement agreement and documents of title that are identical and during the time frame of December through around June of 2017, Volkswagen was processing and paying all forms of title, branded, junk, salvage, without distinction and it is during that time period my clients attest in their declarations and have submitted evidence that in reliance on Volkswagen processing and paying those claims, they purchased other vehicles and Volkswagen paid branded title claims, junk title claims of these exact same clients 91 times and then... But counsel, your clients were aware that the settlement agreement permitted modification so why didn't they bear the risk that the settlement agreement would be modified? They bore the risk in general but not it specifically. Under the California contract law protecting third-party beneficiaries, persons who rely without notice on the terms of an agreement are protected from having that agreement changed without notice the and during the time Volkswagen was processing and paying the claims claimants relied. Counsel, how are your clients third-party beneficiaries to the agreement for vehicles they've not yet purchased? They're non-Volkswagen dealers defined under section 262.16 as class members and they have obtained eligible vehicles for return to Volkswagen that is all that the settlement agreement requires. And it is during that time period of reliance which is two full years before the district court approves a modification that sets at least the consolidated claimants within the protections of California law governing persons in this position. They're protected by third-party beneficiary law from a change such as this. Are you saying that California law overrides the modification terms of the settlement which as I read it does not require notice to the parties notice to the class? Well your honor, yes the settlement agreement incorporates and adopts California law. It shouldn't change it, it should follow it. The choice of law provision in the settlement agreement is California law and as such the consolidated claimants are protected from a retroactive modification. That's what happened here two years after they purchased these vehicles the district court approved a modification a modification that Volkswagen even denies occurred. As such they there is a clear error in the approval of the modification in that it runs contrary to the protections in California law for class members in the situation of the consolidated claimants. But for a party to be a third-party beneficiary doesn't there have to be some intent or at least knowledge of the existence of the beneficiary in order to benefit that person. You people weren't even in existence when this was when the original agreement was made. Thank you for that question your honor. In fact the definition of class was expressly amended at the time the agreement was entered into to include non-Volkswagen dealers and in fact all three of the consolidated claimants have been non-Volkswagen dealers for many many years. Each of them are different. AutoVid, Farsione over 10 years, the Kennedy's claimants less time but not they have all been non-Volkswagen dealers since before June of 2016. Counsel, I think the point of Judge Schroeder's question was you didn't own the vehicles at the time of the settlement agreement. You purchased them, you are in reliance on the language of the settlement agreement after it was entered. For some of the consolidated claimants, yes. For AutoVid, there was an inventory that was existing. AutoVid has been in the business of TDIs for 14-15 years and but for the other claimants, yes. They began purchasing the vehicles in reliance on the plain meaning and the fact that Volkswagen was processing and paying identical titles and it was because of that processing and paying of identical titles that more vehicles were purchased on the expectation that we're assisting Volkswagen in cleaning up their pollution mess. Volkswagen promised to buy back 100 of these vehicles and we were out there collecting them for them. Counsel, weren't these vehicles already off the road? They were total, they were junked, however you want to phrase it. How are you benefiting them and getting them off the road? That's the key point. Thank you for that, your honor. Off the road is not the same as out of stream of commerce. There's a robust salvage market in the country. These vehicles are many have rebuilt titles. They're sent back out, they can be sold to the public and there's very little to no incentive for the members of the public to get this modification which will apparently affect the performance of the vehicle without Volkswagen purchasing these vehicles back. Critically, in the FTC consent order, there is a process by which Volkswagen can purchase these vehicles back and put them into the stream of process ordered by the court. They're simply leaving the consolidated claimants with the liabilities but not cleaning up their pollution mess. We have 220 vehicles, many of which have rebuilt titles or could obtain rebuilt titles, many of which are being driven by dealers on their dealer tags and they remain in commerce and will remain in commerce and that was always an issue. Total is not the same as out of the stream of commerce. If Volkswagen wanted to, wants to take the vehicles out of the stream of commerce like they promised to do, they need to buy those vehicles back, make the modifications and follow the consent orders for returning these vehicles to the stream of commerce. That's not what they've done but they've promised to do so and this court should order that they do so. Which leads to the second request, which is that once the modification is viewed as an error, we invite the court to look at the language of the contract as a matter of law and perhaps following the recent Hillsborough decision, also in this class action case, 18-15937, handed down by the ninth circuit on June 1st, where that court applying the text and structure and plain language of the Clean Air Act found that Volkswagen has potentially continuing and even if it's unexpected and enormous liability, the plain language text and structure as a matter of law can lead to that outcome. That is precisely the situation we have here, your honors, with the plain meaning, plain language text and structure of the unmodified settlement agreement demonstrates that the consolidated claimants, 220 eligible vehicles are plainly covered under the settlement agreement and should be bought back by Volkswagen with full buyback and restitution. That's the one problem I have, under the plain meaning of the settlement agreement, modifications are allowed without notice to class members. Only if there's an approval of the court and there's a writing of the parties. First of all, there's no writing of the parties here. That's the writing of the CRC is not a writing of the party. It's a writing of a current is not a writing of the parties. And secondly, if the district court found that, would we have to reverse that as clearly erroneous? It would appear to be clearly erroneous and that there is no writing of the parties, but more to the point, there was also was no notice while the consolidated claimants were relying on the plain meaning and the performance of Volkswagen. They had no notice that this particular provision would have been shipped. If they had that notice, they would have stopped. The settlement doesn't require the notice. That's the point. Well, but it does because California law protects persons who are class members from modifications that are made without notice during their period of reliance. And this is where the evidence in the record of the consolidated claimants distinguishes this and establishes that California law protects them because the evidence shows that they relied without notice on a change of their scope. So as it includes branded titles, et cetera. What case are you relying on for that proposition of California law? They're cited in my brief, your honor. The cases, they appear in the third party beneficiary section and they are Nevercovec, Silvera v. Harper. That's the main case, your honor, the $4,000 relied on for the road contract. And then Spinks v. Equity Residential Briarwood Apartments. They also appear in the reply. It's also section 1559 of the California Civil Code. And that's pages 25 and 29 of the reply. And there's a whole section in the brief on it. There are no further questions. I'd like to reserve my remaining time for rebuttal. That's fine. Thank you. Thank you, counsel. Ms. McGinsey. Thank you, your honors. Diane McGinsey from Sullivan and Cromwell for Volkswagen. I want to start and back up with a little bit of context about the settlement to address some of the statements made by counsel and because it helps inform some of the provisions at issue, not only the modification provision, but some other provisions that would be independent grounds to affirm the district court. These settlements were reached and implemented with record speed. The EPA issued its notice of violation on September 18th of 2015. And less than a year later, the settlements had been reached with the plaintiff's steering committee on behalf of the class of consumers, as well as the FTC, the DOJ in California. And among other things, the settlements resolved the claims of more than 500,000 class members and involved the payment of up to $10.03 billion to consumers who were harmed by diesel emission issues. Now, ordinarily, implementation of a settlement wouldn't begin for many, many months after approval, while any appeals are resolved and the defendant takes the needed time to set up a claims program. But here, in order to facilitate the goal of compensating consumers and getting vehicles off the road or fixed as quickly as possible, VW agreed to start implementing settlements immediately after they were approved. But as a result, and as a result of all of the complexities in the agreement, they built in, the parties built in various provisions to provide some flexibility to the administration of the agreement and to deal with anticipated complexities. So we want to start with the revisions in the settlement agreement because those provisions make this a very simple case and provide an independent ground to affirm the district court's order without needing to reach appellant's contract or equity arguments. Because of the size of the class and the amounts of money at issue, which is in the thousands of dollars to tens of thousands of dollars for any individual class member, and the complexity of provisions, the parties agreed on a carefully negotiated set of provisions that actually detailed how each settlement claim would be reviewed. And importantly, made clear that appellants had no right to seek a district court review of their claims. So unlike many settlements where a third party claims administrator handles the whole review and makes clean decisions, the diesel settlement provides for multiple levels of review for every claim. So first, VW, acting as a claim administrator, makes an initial eligibility determination. And then a court appointed claim supervisor, Sankara, reviews that decision before any eligibility decision is made and communicated to the class member. And then from there, the parties anticipated that there would be certain consumers, given the amounts of money at issue, who were deemed ineligible, who would want to contest those decisions. So the parties agreed on a third level of review, which was to be done by a court appointed claims review committee, which we refer to as the CRC, and empowered that committee to make final eligibility determinations. And the relevant language in the agreement is that paragraph 5.3, quote, determinations by the CRC as to ineligible claims will constitute final determinations, end quote. The finality of CRC decisions was a necessary component of settlement for both sides because without finality of decisions, both sides would be potentially subject to litigating thousands of mini trials and appeals initiated by consumers and potentially VW contesting eligibility decisions, which would have defeated the purpose of the class settlement. But counsel, isn't what the claimants are arguing is not, they're not challenging individual claims, they're actually challenging a new framework that was adopted by the CRC, which does seem to be a the rights of the class. Well, our position is that our initial position is that this is not, it's an interpretation of the agreement and wasn't a modification of the agreement and that these would be challenges to individual claims. But even if you characterize this as some sort of breach of the settlement agreement, the parties also anticipated this as well in the agreement itself. And there's a provision that specifically provides that only class representatives are authorized to assert breaches of the agreement. And the rationale again is similar to the rationale for making CRC decisions final, which is that if every individual class member that has a claim denied, whether they characterize it as a review of their claim or a breach of the terms of the settlement agreement is permitted to assert a breach of the agreements, the parties again lose the benefit of the class action vehicle. So we would submit that both of those provisions doom a balance motions and the court would need to go no further. What do you make of the claimants claim that they're third party beneficiaries of the settlement agreement and therefore have a right to sue? I don't think the third party beneficiary doctrine applies here because claimants are, they're alleging that they're class members. And there's some complexity here because it's not like a normal class where, you know, you have one claim. You could have somebody who's part of the class who has some vehicles that are eligible and some vehicles that are not eligible. And we didn't get into sort of that level of complexity in the district court for the purposes of these arguments. We didn't contest that they were class members, in which case the third party beneficiary doctrine wouldn't even apply at all. But in any event, even if it did apply, it wouldn't help appellants here because the contract itself says that it can be modified without further notice. And so while those third party beneficiary cases that were cited by Mr. Sigovic are all inapplicable here, none of those cases specifically dealt with an agreement that it said by its express terms that it can be modified and didn't provide for court's modification itself. So even if this court thinks that, finds that the CRC provisions don't preclude the motions or determines not to weigh in on those, the district court order should still be affirmed on the ground that the approval of the modifications to the agreement wasn't an abuse of discretion. Now, appellants argued, Mr. Silverstein argued earlier that there needed, the modification needed to be done prior to the approval of the class settlement. Otherwise, it could only be a modification that didn't impact the rights of the class members. That's actually a new argument that he's making here that wasn't made in their briefs. They relied on notice and a different standard in the briefs. And I'll address the first standard that appellants argued that the modification requires a substantial change in circumstances relying on the court's opinion and Flores v. Lynch. Now, Flores and the other cases that were cited by appellants in their briefs aren't applicable here because, again, the provision that we're dealing with here states that the agreement may be, quote, amended, modified, or expanded by written agreement of the parties and approval of the court. There's nothing in the agreement that conditions the amendment on a substantial change in circumstances or on providing notice to the class members. And that finding was based on a couple of factual findings by the court's, sorry, the district court's finding that any modification was concorded with the intent of the settlement was based on two factual findings that are entitled to deference here and showed that the court's approval wasn't an abuse of discretion. First, the district court found the modifications were consistent with the goals of the class action agreement to compensate consumers. Counsel, before you get to that question, what do you make of their argument that there was no written agreement by the parties here? We believe that the parties' agreement is sufficiently reflected in the claims supervisor's report, and there's certainly adequate evidence in the district court record as to the parties' requirement to work with and provide information on requests to the claims supervisor, which produced reports collecting the information from the parties throughout the claims period. But to the extent there's any question as to whether the claims supervisor's report constituted a sufficient writing, it surely wasn't an abuse of discretion. But if this court has a question, I think it would be something that should be sent back to the district court in the first instance and to consider on a full evidentiary record because the parties actually could provide a separate written document if needed. Because at this juncture, you're not acknowledging that it was a modification. So it's a little bit of an awkward position, right? It's a very awkward position. Our view is that when you interpret the terms of the agreement, as counsel mentioned holistically, together with the intent of the settlement and all of the provisions that are designed together to compensate harmed consumers, people who are harmed by the diesel emissions issue, we would argue that this isn't a modification. It's really just clarification of terms, which had to be done throughout the settlement because of the number of different circumstances that came up. And counsel pointed to the different categories set forth in the claims supervisor's report, which I think is a little misleading because the claims supervisor's report not only talks about the interpretation of the agreement itself, but how claims are processed, what types of documentation need to be provided, because a lot of this really boiled down to the administration of the settlement and what kinds of documentation that needs to be done. So there was no effort to create subclasses here. It was really an effort by the parties to interpret the agreement as it applied to different scenarios. And again, back to the important point here, which was that the parties were entitled to do that without providing additional notice. And the parties, the class members were all on notice that this may happen. They were on notice when they bought these vehicles after the emissions fraud was revealed and after the claims might be denied by the CRC or the claims administrator or Volkswagen. And they were also on notice that there may be a modification of the agreement in order to comport to the intent of the agreement that didn't require further notice. It only required approval by the district court, which is what happened here. And so I take it you would argue with the big picture that it's not good. It would not be good law to say that parties can't modify an agreement once there's been a settlement, because that would just delay and make everything a lot more expensive. It would, and it would make it impossible to achieve a settlement like this, where the parties literally agreed the documents were signed at the end of June, and the parties started implementing the agreements at the end of October, right after the court approved the settlements. I have some figures here, if it's helpful at all. So by about a month after the settlement was approved, which was just, again, a mere months after it was entered into, 241,455 claims. And Volkswagen had processed 165,223 of those claims. And that's in the Claim Supervisor Report of November 25th, 2016, Supplemental Excerpts of Record 56. If there wasn't flexibility in the settlement agreement to address appeals by class members, and also to make modifications that were consistent with the intent of the parties as approved by the court, you would never be able to achieve a settlement with this speed, achieve and implement a settlement with this speed. Why doesn't the parties just accept the district court's ruling that this was a modification? That's what I don't understand. Well, I think that in our view, I mean, we accept for purposes of this argument, we accept that it was a modification. Our view and our intent and effort in interpreting the agreement was an effort to interpret the agreement. And we still believe that the settlement provisions and the interpretation was fully consistent with the language and the intent of the agreement together with the other agreements that were entered into at the same time, which is important as the district court noted that this wasn't one agreement that was entered as a standalone. It was entered into at the same time as the partial consent decree with the DOJ and the California and the FTC. And so when you're talking about the goals of the settlement, each of the different settlements achieve different goals in different ways. But we don't think that we need to reach that because if it was a modification, it was perfectly appropriate, it was consistent with the intent of the settlement, and it was approved by the district court. So if I understand you, you're saying that you don't think that this is a modification in the sense that it changed what everybody intended in the first place. But even if it was a change, it was contemplated and within the authority of the parties to do and the judge. That's correct, your honor. The intent was always to compensate class members who were harmed by the diesel emissions issues. And, you know, to be sure, there are provisions in the agreement, and this is a little bit unique to this agreement too, that allowed a class member to effectively sell their claim. So somebody who was harmed by the diesel emissions issues and was deeply offended by the notion of driving around a polluting vehicle and didn't even want to wait the three months or four months that it took to implement, had the ability to effectively sell their claim to some another person who could step in their shoes. And the settlement amounts were all public so they could make a transaction in that way. There was never an intent to go and pay tens of thousands of dollars to people who bought with full knowledge of the diesel emissions issues, vehicles that were of a depressed value because they had been totaled and transferred to their insurance companies. In fact, the totaled provisions of the settlement actually contemplate, now whether they're all actually off the road or not, the total provisions contemplate that the vehicles are off the road. So the individuals who totaled the vehicles get paid some amount of compensation, but not the full amount of compensation because they've turned the vehicles over to their insurance companies. And if there was an intent for the vehicles to go from the individual harmed class member to the insurance company, to the insurance auction, to some car dealer who's going to sell it back to Volkswagen, I would presume that the settlements would say that, or the more efficient way to achieve that buyback would have been to just buy the vehicle back directly from the consumer who had totaled it in the first place who was the harmed consumer. So I want to briefly address just one other argument that was made by counsel, which was the course of performance argument, the argument by Mr. Sigovic that his clients purchased a number of vehicles in reliance on the fact that Volkswagen was processing branded title claims for some portion. Briefly, there was no expectation of repeat performance here. This program was designed for a claim by claim review of individual class members. The vast majority of claims were submitted by individuals. Less than 5% were even submitted by businesses. Now appellants focus on the number of their specific claims that were accepted before VW started rejecting some of their branded title claims. I think the first year only appellants cited 51, auto bid 33, and Kennedy's autos cited eight. Even if you round those numbers up and you look at those numbers relative to the total number of claims that were being processed by Volkswagen at that time. So as of May of 2017, Volkswagen had processed over 270,000 claims from owners and lessees who had sold their vehicles back to Volkswagen, which means if you take all of those appellants vehicles collectively, those branded title claims that had been paid comprised less than 0.04% of the claims paid by May of 2017, which we would submit is nowhere close to being a course of performance that would require Volkswagen to continue processing claims that it hadn't intended to process in the first place. Now, there are a number of other arguments made by counsel that we didn't sufficiently address in our brief, so unless the court has any other questions, we'll submit on the briefs. Thank you, counsel. Mr. Silverstein? Mr. Degali will be rebutted. Okay, thank you, Mr. Degali. Thank you, your honor. If you'd please hand it to Degali for the Haddad claims. There's four points that were raised by counsel. These people know when they bought these cars that there was a risk the deal might change. The answer to that is no. Because in this situation, they were entitled to notice on a post-approval change if that change would limit their rights. In this case, it's undeniable. I don't need, I, like you, have been confused by VW's position that it's not a modification because they actually redrafted the definitions and carved people out of this class, including everybody with a salvage title. Before the deal, before the change, some salvage titles were in and some weren't, and after, none of them. It just can't be dealt with in this sort of fashion, and so when these people bought these cars, they knew that if any modification happened, they would find out about it. They would get notice. Then they would have something they could do. They could decide. But what's the basis of that? Is it under the contra, under the settlement, or under California law that you're saying that they're entitled to by the judge that provides that the written agreement is required in post-approval after the final approval order? A written agreement is still required, and notice is required unless notice is not required so long as the change is consistent with the goals of the settlement and does not limit the rights of the class members? Well, I think the first clause of the all-you-need-is-written-agreement-of-the-parties-and-approval-of-the-court. That would always have pre-approval. It would be merged into the final approval, so prior to final approval, yes, there'd be some written instrument because he would approve it at the final approval time. Post-approval modifications of class deals is not that uncommon. It's usually dealt with to address a gap in the class if somebody got left out. Therefore, you can expand it. You can always give more remedies, more relief to the class. Judge doesn't need to go back and readdress that all the time. In this instance, it's that he required specifically, the settlement required specifically that any modification had to be consistent with the deal and not limit the rights of the class members. The changing of these definitions so dramatically wiped out a lot of these class members, especially our clients. So the judge entered findings on this consistent with the final approval order. He did not enter any findings on whether it limited the class or not. With respect to consistent with the settlement agreement, he said it's consistent because he found what Mr. Silverstein referred to as this profiteering idea, but nowhere in the agreement is there anything about that being some sort of taboo. And so the only thing he ever said was that it's consistent, but your honor, 75% of my clients' cars drive today. There is no issue about when the district judge was talking about, well, they're still on the road and they're not on the road anymore, so there's not polluting, so there's no risk to anybody. 75% of them can drive today and the other 25% of them could drive tomorrow after some repairs. All the rebuilt titles in the case are drivable. That's why they're called rebuilt. Somebody bought it and rebuilt it. And why those members of the class have been denied relief remains a that, okay, it'll just be changed without notice to me. So for two and a half years, if anybody looked at this docket, they would never have seen petition to application to modify settlement agreement. They never would have seen that. So they didn't know what's happening. And Ms. McKimsey was right. It went really fast for everybody. It went really slow for these folks. And so they could not have anticipated that they wouldn't know about it. They couldn't look at the body from a quasi judicial one to a legislative body and participate in writing the framework itself. So all kinds of things happened that, no, Your Honor, they didn't undertake a risk that all those things would happen without sort of notice to them. I think I'm probably over the time that was allowed for our rebuttal. I appreciate the time. Thank you, counsel. Mr. Sigovit. Thank you, Your Honor. Mr. Degali really nailed it in that 14.1 on the plain meaning does require notice if the rights of the parties are going to be changed. That's precisely what has happened here. The consolidated claimants relied during the operative time. They shouldn't be made to on the road. The issues continue. As the Hillsborough case points out, Volkswagen's liability may continue. We appreciate that they wanted everything to be done for all time in the past, but that doesn't permit them to make errors of law that are unreviewable. It almost sounds like they're arguing that the contract is illusory and they can make it to mean whatever they want whenever they want it. And that is contrary to California law and should not be supported or upheld by this court. They promised to buy back 100% of these vehicles. Their interpretation of the agreement as finality means nobody can review their errors is contrary to decisions by Judge Breyer that have been approved by this court in the Collins versus United Airlines matter where the court should not defer to erroneous interpretations of law and the interpretation of contract is a question of law. And that is why we are here to say that the unmodified settlement agreement as a matter of California contract interpretation law covers the consolidated claimants 220 claims. Volkswagen promised to buy them back to get 100% of these offending vehicles off the road. They should stick to their word this time and buy back these vehicles. We have them. We're ready to go. We ask that the court order Volkswagen pay these claims full buyback in restitution or enter an order directing the district court to enter such an order. Thank you, counsel. This case is submitted and this panel is adjourned. Thank you, your honors. Thank you, your honors.
judges: Schroeder, Bumatay, Morris